FILED

FEB 2 1 2013

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          )
                                  )
        v.                        )
                                  )   Case: 1:13-mc-00142
AURELIO CANO FLORES,              )   Assigned To : Rothstein, Barbara Jacobs
        A/K/A YANKEE,             )   Assign. Date : 2/21/2013
        A/K/A YEYO,               )   Description: Miscellaneous
                                  )
        Defendant.                )

## GOVERNMENT'S RESPONSE TO WITNESS MARIO QUINTERO-LARA'S MOTION TO QUASH SUBPOENA

The United States of America, by and through its undersigned counsel, hereby responds to witness Mario Quintero-Lara's Motion to Quash Subpoena, filed on February 20, 2013, at 5:02 p.m. (Doc. 121). In his motion, the witness moves to quash his subpoena to appear and testify on three grounds. First, he asserts the evidence sought by the government is inadmissible. Second, he asserts his testimony would create a "chilling effect on freedom of artistic expression." Finally, he asserts fear of reprisal and perceived danger to himself and others as grounds for quashing valid legal process.[1]

---

[1] Rule 611(c) permits the government to use leading questions when examining hostile or frightened witnesses. *United States v. Hicks*, 748 F.2d 854, 859 (4th Cir. 1984); *United States v. Olivo*, 69 F.3d 1057 (10th Cir. 1995) (judge given widest latitude in designating witness as hostile); *United States v. Castro-Romero*, 964 F.2d 942, 943-44 (9th Cir. 1992); *United States v. Bear*, 883 F.2d 1382 (8th Cir. 1989). The government anticipates using leading questions with this witness.

1

## I.   STATEMENT OF FACTS

On September 6, 2012, a grand jury returned a third superseding indictment against defendant and several others for conspiring to violate U.S. narcotics laws.  The indictment alleges that defendant was a member of a Mexican drug trafficking organization, referred to as "The Gulf Cartel" or "The Company," for several years.

At trial, the United States has thusfar called several members of the Gulf Cartel to testify about the organization and defendant's participation and role in it.  The government has also introduced dozens of judicially authorized intercepted phone calls between defendant and co-conspirators in which they plan and discuss their drug trafficking activities.

In preparation for trial, the government discovered the two items of evidence now at issue. First, the government learned of a *"narco corrido"* ballad[2] sung by the witness and his admittedly famous band "Los Tucanes de Tijuana" entitled "El Yanky," glorifying the rise of defendant Aurelio Cano Flores from Police Commander to leadership in the Gulf Cartel, which was posted on "YouTube."  Second, the government determined that among its intercepted phone calls were a number of calls (approximately 80 in 10 months) between the witness and Samuel Flores Borrego, or "Metro Tres," a leader in the Gulf Cartel.  In an early call, Metro Tres commissions the *narco corrido* in honor of his friend, Yankee, and identifies him by name as Aurelio Cano Flores.  A number of calls discussing the progress of the *narco corrido* followed.

---

[2] *Narco corridos* have already been explained by government witness Jose Hinojosa as tribute ballads commissioned by and written for cartel leaders, which were often performed at cartel parties and functions.  They are also, apparently, wildly popular as a form of pop music.

## II. ARGUMENT[3]

**1.      The motion to quash is untimely.**

Fed. R. Crim Pro. 17 allows the issuance of a trial witness subpoena for the purpose of

testimony or the production of documents or records.   17(c)(2) states that "upon motion *made*

*promptly*, the court may quash or modify the subpoena if compliance would be unreasonable or

oppressive." (Emphasis added).   Counsel for the witness accepted service of the subpoena for this

trial on January 25, 2013. All of the issues now raised in the motion to quash were equally available

at that time, and it is clear the last minute filing was tactical.

**2.      The relief requested in the motion to quash is premature.**

The witness cannot claim the evidence sought by the government is inadmissible until the

government has had the opportunity to lay the requisite foundation.  The government attempted to

interview the witness before trial and was refused.  The government's theory of admissibility will

become evident at the hearing.  The government requests the witness be subjected to *voir dire*

outside the presence of the jury to determine if the necessary foundation can be laid.  The United

States recognizes the holding in *United States v. Gamory*, 635 F.3d 480 (11th Cir. 2011), but believes

its fact pattern is distinguishable.

**3.      The witness's argument that his testimony will have a chilling effect on freedom
         of artistic expression is unsupported by caselaw.**

The witness concedes that the D.C. Circuit has found that a reporter maintains no First

Amendment privilege against revealing her source.  *See* Witness Motion to Quash at 7 n.1 (*citing*

---

[3] Due to the very late notice counsel for the government received of this motion, the
written argument will be abbreviated.  The government will be ready to argue the motion at the
hearing scheduled for tomorrow morning.

*In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141 (D.C. Cir. 2006). Indeed, the Supreme

Court has explicitly so held. *See Branzburg v. Hayes*, 408 U.S. 665, 667 (1972). The witness

argues that "artists" should somehow enjoy a higher level of protection than the press. However, the

witness offers no support for this naked assertion. Indeed, the United States submits that if the

interest of the Court and jury in the truth-seeking process outweighs that of the press, it stands to

reason that those weighty considerations also outweigh that of a musician who makes songs about

narco-traffickers.

The authorities cited by defendant for the proposition that this subpoena will chill speech are

distinguishable on their facts. *See* Mot. at 6. The cases referenced deal with regulations and

statutes that were challenged because of their effect on speech. Here, a trial subpoena in a criminal

case is distinguishable from the authority cited. The particular truth-seeking function of a trial

subpoena puts it on fundamentally different footing than the billboard ordinance in *Prime Media,*

*Inc. v. City of Brentwood*, 485 F.3d 343 (6th Cir. 2007), or the withholding of funds by a university

based upon religious considerations in *Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515

U.S. 819 (1995).

### 4.   The witness's argument that his testimony will put him in danger cannot justify a refusal to testify.

The government is sensitive to witness security issues in this and every case it tries. The

witness's stated profession is one that is inherently dangerous according to the witness himself, yet

he engages in it willingly. The government attempted to limit the exposure of the witness by

exploring the matter pretrial in a non-public setting. The witness refused, leaving the government

with no choice other than to proceed at trial.

4

While the witness's fear may be well-founded, it is well-settled that fear of harm to one's safety cannot justify a refusal to testify. *Piemonte v. United States*, 367 U.S. 556 (1961); *accord*, *In re Farrell*, 611 F.2d 923 (1st Cir. 1979); *United States v. Doe*, 478 F.2d 194 (1st Cir. 1973); *United States v. Dien*, 598 F.2d 743 (2d Cir. 1979); *In re Kilgo*, 484 F.2d 1215 (4th Cir. 1973); *In re Grand Jury Proceedings*, 605 F.2d 750 (5th Cir. 1979); *In re Grand Jury Proceedings*, 509 F.2d 1349 (5th Cir. 1975); *United States v. Damiano*, 579 F.2d 1001 (6th Cir. 1978); *In re Long Visitor*, 523 F.2d 443, 447-8 (8th Cir. 1975); *LaTona v. United States*, 449 F.2d 121, 122 (8th Cir. 1971); *Dupuy v. United States*, 518 F.2d 1295 (9th Cir. 1975).

For all these reasons, the motion should be denied.

Respectfully submitted this 20th day of February, 2013.

> ARTHUR G. WYATT, Chief
> Narcotic and Dangerous Drug Section
> Criminal Division / U.S. Department of Justice

By:  */s/ Darrin L. McCullough*
> Darrin L. McCullough
> Trial Attorney
> Narcotic and Dangerous Drug Section
> Criminal Division / U.S. Department of Justice
> 145 N Street, NE
> Washington, DC 20530
> (202) 616-2255
> Darrin.mccullough@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of February 2013, I filed the foregoing with the Clerk of the Court via ECF/CM, which will result in automatic notification to all counsel of record.

Respectfully submitted this 20th day of February, 2013.

ARTHUR G. WYATT, Chief
Narcotic and Dangerous Drug Section
Criminal Division / U.S. Department of Justice

By:     /s/ Darrin L. McCullough
Darrin L. McCullough
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division / U.S. Department of Justice
145 N Street, NE
Washington, DC 20530
(202) 616-2255
Darrin.mccullough@usdoj.gov